**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **MOLLY ANDERSON** : <br> 2303 Ziner Circle North : <br> Grove City, Ohio 43123 : <br> : <br> Plaintiff, : <br> : <br> vs. : <br> : <br> : <br> **SKY CLIMBER, LLC.** : <br> c/o Statutory Agent <br> Transcontinental Agents, Inc. : <br> 50 West Broad Street, Suite 1200 : <br> Columbus, Ohio 43215 : <br> : <br> : <br> Defendant. : | CASE NO. 2:17-cv-341 <br><br> JUDGE <br><br> MAGISTRATE JUDGE <br><br> **Jury Demand Endorsed Hereon** |

## COMPLAINT

NOW COMES Plaintiff Molly Anderson ("Plaintiff") and proffers this Complaint for damages against Defendant Sky Climber, LLC ("Defendant").

## JURISDICTION AND VENUE

1. This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201, *et seq*. and Ohio common law.

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 29 U.S.C. § 1332(e), which provide for original jurisdiction of Plaintiff's claims arising under the law of the United States and over actions to secure equitable and other relief.

3. This Court has jurisdiction over Plaintiff's claims under the statutory law of Ohio pursuant to supplemental jurisdiction as codified at 28 U.S.C. § 1367.

4. Venue is proper in this forum pursuant to 28 U.S.C. §1391, because Plaintiff Anderson entered into an employment relationship with Defendant in the Southern District of Ohio and performed her job duties there and Defendant is doing and has done substantial business in the Southern District of Ohio.

## THE PARTIES

5. Plaintiff, Molly Anderson, is an individual, a United States citizen, and a resident of the State of Ohio. Ms. Anderson resides in Grove City, Franklin County, Ohio.

6. Defendant Sky Climber is a foreign Corporation doing business in the Southern District of Ohio.

7. At all times relevant herein, Plaintiff was an employee of Defendant as defined by the FLSA.

8. Defendant Sky Climber is a covered "employer" as that term is defined by the FLSA.

9. At all times relevant to this action, Defendant was engaged in commerce or in the production of goods for commerce, and/or the business activities of Defendant constituted an enterprise engaged in commerce within the meaning of the FLSA.

## FACTUAL BACKGROUND

10. Plaintiff began working full time for Defendant in or around August of 2016 as a Human Resources Manager and remained in that position until approximately April of 2017.

11. Plaintiff's job duties as a Human Resources Manager for Sky Climber included planning, directing, and coordinating the administrative functions of the organization, in addition to overseeing the interviewing and hiring of new staff, and serving as the link between the company's management and its employees.

12. Plaintiff's job duties did not include payroll processing; however, Defendant's Payroll Department would consistently ask Plaintiff and a coworker to assist in the Payroll Department.

13. Defendant Sky Climber LLC designs, manufactures, and distributes suspended access equipment used in industrial and commercial construction and maintenance applications. Defendant oversees numerous facilities and its headquarters and/or operations center is located at 1800 Pittsburgh Drive, Delaware, Ohio, 43015.

14. As a Human Resources Manager, Plaintiff was on Defendant Sky Climber's payroll and reported to the Human Resources Director, her direct supervisor, and the company's Chief Financial Officer ("CFO").

15. While employed by Defendant, Plaintiff was not subject to any disciplinary action, nor did she receive any counseling with regard to her job performance.

16. Defendant utilized the services of third-party company Paycor, specifically its payroll and timekeeping software, to assist with the computing and recording of employee work hours.

17. Defendant's facilities are equipped with biometric time clock systems that collect payroll data directly from Sky Climber employees' handprints, which they scan to "clock in" and "clock out."

18. However, Sky Climber management has the ability to adjust the rounding mechanism and/or alter the employee time records, including clock in and clock out times.

19. In the beginning of January of 2017, Plaintiff was approached by an employee at one of Defendant's manufacturing plants with concerns that management had altered his time records by rounding his clock-in time to result in a shortage of pay for time he spent performing work for Defendant.

20. The plant employee also asked Plaintiff whether rounding of his clock-in and clock-out time was permissible.

21. The plant employee informed Plaintiff that management requested he report to work on a particular day at 5:30 a.m., which was prior to his regularly scheduled shift, which began at 6:00 a.m.

22. Despite the employee's arriving to work early as directed by management, Defendant, by and through Plant Manager Richard Stephens, altered the plant employee's clock-in time from 5:26 a.m. to 6:00 a.m, even though he was present performing work as he was requested to do.

23. On yet another occasion, Defendant altered this same employee's clock-in from 5:46 a.m. to 6:00 a.m.

24. Plaintiff believed this practice was unlawful, as Defendant was editing employee time cards and deleting time worked by this employee, resulting in non-payment of wages for hours actually worked.

25. On or about January 6, 2017, Plaintiff spoke with Sky Climber's CFO, Jeff Caswell, and told him that that she believed this practice was unlawful.

26. Plaintiff also provided him with Paycor documentation that showed that Defendant had rounded the plant employee's work time and deleted time he spent actually working.

27. Mr. Caswell stated to Plaintiff that he did not believe that Sky Climber's practice of rounding employee work time was illegal and did not address the matter further.

28. Plaintiff also told Caswell that she believed Defendant's practice of rounding employee work time violated the FLSA and/or Department of Labor standards because it consistently benefitted the employer and not the employee.

29. Defendant uses a "rounding" policy at several of its locations. Defendant's rounding policy is set up to round up from any clock that is fifteen (15) minutes or less prior to a start time, and to round back from a punch that is fifteen (15) minutes or less from clock out time.

30. For instance, if a Sky Climber employee is scheduled to work from 6:00 a.m. to 4:00 p.m. and clocks in at 5:45 a.m., the system will round this time to 6:00 a.m. If this same employee clocks out at 4:15 p.m., the system will round this time back to 4:00 p.m.

31. Defendant's rounding policy essentially deducts thirty (30) minutes of time actually worked from an employee's timecard and results in a shortage of pay.

32. Plaintiff found out about Defendant's rounding policy from phone conversations she had with Sky Climber's payroll provider, Paycor.

33. Plaintiff subsequently confirmed the rounding policy with Defendant's Payroll Manager, Rebecca Penhorwood.

34. Plaintiff believed the rounding policy itself was unlawful because it was not neutral and more often than not, worked in favor of the employer and resulted in a benefit to Defendant.

35. Plaintiff was aware that rounding policies under the FLSA must be applied in a manner that is relatively equal to the employee and the employer in order to be considered lawful.

36. Plaintiff also believed Defendant's rounding policy was unlawful because the policy was applied in such a manner that, over a period of time, failed to compensate its employees properly for time actually worked, in violation of 29 C.F.R. § 785.48(b).

37. Plaintiff opposed Defendant's unlawful and improper manipulation of employee time records and opposed its unlawful rounding policy that resulted in the unlawful and improper non-payment of wages and overtime pay to Defendant's employees.

38. Plaintiff reasonably believed that multiple Sky Climber employees were being "shorted" time due to Defendant's rounding rule.

39. On or about January 18, 2017, Mr. Caswell approached Plaintiff in her office and stated that upon the new HR Director's arrival, Plaintiff would need to depart and find other employment due to "budgetary restrictions" and because Plaintiff "seemed unhappy." Mr. Caswell also stated, "Maybe this isn't a good fit for you."

40. Plaintiff stated that she was only unhappy due to the unethical and/or illegal employment practices she had witnessed while at Sky Climber and Defendant's failure to address these practices.

41. On or about January 18, 2017, Plaintiff sent an email to Mr. Caswell, Vice President of Operations and Engineering, Mark Wigginton and Payroll Manager Penhorwood, among others, advising that Sky Climber was not permitted to adjust or alter employee time punches, regardless of the time an employee clocks in, unless Sky Climber could verify that the employee was not actually performing work during this time.

42. Plaintiff further advised that employees clocking in early and/or outside of approved time should be subject to corrective action instead, as Defendant's practice of rounding employee work time violated the FLSA and/or Department of Labor standards.

43. Mr. Caswell responded that same day, stating that Plaintiff was correct and that methods other than corrective action were not compliant with the Department of Labor standards.

44. Mr. Caswell also stated that Sky Climber's legal counsel had advised that Defendant could not continue implementing the rounding rule.

45. On or about March 1, 2017, Plaintiff informed Human Resources Director Sherry Trujillo, of her concerns that Defendant's rounding practices violated the FLSA and/or Department of Labor Standards.

46. Plaintiff forwarded the emails she had previously sent to Mr. Caswell to HR Director Trujillo on January 18, 2017, so Ms. Trujillo was aware of the prior complaints Plaintiff made about these practices.

47. On March 3, 2017, Plaintiff discovered that another employee, an accountant, was shorted five (5) minutes of time actually worked due to Defendant's rounding rule.

48. Plaintiff believed that the office staff employees, like accountants, were not subject to the rounding rules. Payroll Manager Penhorwood was allegedly addressing this issue.

49. On or about April 10, 2017, Plaintiff was called into HR Director Trujillo's office for the purpose of discussing the rounding rule. Present in this meeting were HR Director Trujillo and Payroll Manager Penhorwood.

50. During this meeting, HR Director Trujillo and Payroll Manager Penhorwood accused Plaintiff of removing the rounding rule for Sky Climber Fabricating Solutions. Plaintiff, in fact, had not removed the rounding rule for this company and as such, denied these accusations.

51. Later that day, Ms. Trujillo even placed a phone call to Paycor and spoke with Paycor employee Amber Lim while Plaintiff was in her office and was able to verify that Plaintiff made no changes to the rounding rules for Sky Climber Fabricating Solutions.

52. On or about April 20, 2017, Human Resources Director Trujillo and Payroll Manager Penhorwood approached Plaintiff in her office, informing her that she was being terminated because the position "wasn't a good fit."

53. Plaintiff asked Ms. Trujillo to elaborate but Ms. Trujillo declined, stating that she "didn't want to get into it."

54. Defendant terminated Plaintiff's employment almost immediately after she complained that Defendant's rounding policy violated the law.

55. Defendant retaliated against Plaintiff because she complained about the fact that employee time records were being manipulated, resulting in non-payment of wages and overtime, and that Defendant was utilizing a rounding rule which Plaintiff reasonably believed violated the law.

56. The reasons for Plainitff's termination are pretextual.

**FIRST CAUSE OF ACTION**
**Retaliation- FLSA**

57. All of the preceding paragraphs are re-alleged as if fully rewritten herein.

58. This claim is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*

59. Plaintiff engaged in a protected activity when she complained to Defendant that she believed that its practice of rounding employee work time was unlawful.

60. At the time of her complaint, Plaintiff reasonably believed that Defendant's practice of rounding employee work time was not neutral and was used in such a manner that failed to compensate its employees properly for time actually worked, in violation of 29 C.F.R. § 785.48(b).

61. Plaintiff also opposed the unlawful and improper manipulation of employee time records, resulting in the unlawful and improper non-payment of wages and overtime pay.

62. Defendant knew that Plaintiff engaged in such protected activity.

63. Shortly after Plaintiff engaged in such protected activity, Defendant terminated Plaintiff.

64. Because Plaintiff engaged in the aforementioned protected activity, Defendant took an adverse employment action by terminating Plaintiff's employment and denying her the salary, benefits, and other terms, privileges, and conditions of employment for which Defendant is liable.

65. As a direct and proximate result of Defendant's willful and intentional conduct, Plaintiff has suffered and continues to suffer damages in an amount not presently ascertainable. Accordingly, Plaintiff seeks liquidated damages, punitive damages, interest and attorneys' fees, and all other remedies available, as a result of Defendant's retaliation in violation of 29 U.S.C. §215.

## SECOND CAUSE OF ACTION
### OMFWSA, R.C. §4111.13 - Retaliation for Opposing Pay Practices

66. Paragraphs above are incorporated as if fully rewritten herein.

67. This claim is brought pursuant to the Ohio Minimum Fair Wage Standards Act.

68. Plaintiff opposed the unlawful and improper manipulation of employee time records, resulting in the unlawful and improper non-payment of wages and overtime pay.

69. Plaintiff also opposed the unlawful rounding policy used by Defendant shortly before her termination.

70. Defendant retaliated against Plaintiff by terminating her employment.

71. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer damages in an amount not presently ascertainable. In addition, Plaintiff seeks liquidated damages, interest and attorneys' fees, and all other remedies available.

**PRAYER FOR RELIEF**

WHEREFORE:

Plaintiff respectfully requests that she be awarded, back pay and benefits, pre-judgment interest, post-judgment, interest, compensatory damages, punitive damages, liquidated damages, attorneys' fees, expert witness fees and costs of this action, and any other relief which the Court deems just and appropriate.

        Respectfully submitted,

/s/ *Rachel A. Sabo, Esq.*
Rachel A. Sabo (0089226)
**The Friedmann Firm LLC**
1457 S. High Street
Columbus, OH 43207
Rachel@TFFLegal.com
614-610-9757 (Phone)
614-737-9812 (Fax)

Michelle E. Lanham (0091944)
(*Michelle@MLanhamLaw.com*)
**Michelle E. Lanham, Attorney at Law, LLC**
85 E. Gay Street, Suite #600
Columbus, OH 43215
Ph: (614) 803-9240

*Counsel for Plaintiff*

**JURY DEMAND**

Plaintiff demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

/s/*Rachel A. Sabo*
Rachel A. Sabo (0089226)